UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JOSEPH A. MERRICK, Individually and on Behalf Of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>STIFEL FINANCIAL CORPORATION, and STIFEL NICOLAUS & COMPANY, INCORPORATED, )<br><br>Defendants. ) | Case No. 4:08CV1167-HEA |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Lead Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, [Doc. No. 43], seeking an Order suspending the deadline of a proposed settlement proffered by Defendants Stifel Financial Corporation and Stifel, Nicolaus & Company, Incorporated ("Stifel") and compelling the parties to jointly prepare a supplemental notice to putative class members further explaining the terms of the proposed settlement. Stifel has responded to the Motion, and on April 21, 2009, the Court held a hearing on the Motion. Based on the submissions of the parties, as well as the presentations at the hearing, the Court now finds as follows:

### Facts and Background

This matter arises out of the collapse of the auction rate securities ("ARS")

market. Lead Plaintiff's First Amended Class Action Complaint alleges that Stifel violated the securities laws by making omissions and misrepresentations of material fact about the risks, value and liquidity of ARS it sold to members of the putative class. In particular, the Amended Complaint alleges that Stifel sold ARS as cash equivalents it knew or should have known that the securities were not cash equivalents; failed to advise clients of the imminent failure of the ARS market; and left the putative class with over $200 million in frozen ARS when the ARS market collapsed on February 13, 2008. Lead Plaintiff seeks damages including rescission, consequential damages, restitution and disgorgement.

On February 11, 2009, Stifel issued a press release announcing a "Partial Repurchase Plan" to buy back some of the ARS that are subject to this lawsuit. The "Partial Repurchase Plan" indicated that Stifel was planning to buy back the greater of $25,000 or 10% of customers' ARS holdings. According to the parties, this amounts to approximately $37 million worth of ARS or about 20% of the frozen ARS Stifel sold to customers. On February 19, 2009, Lead Plaintiff filed his Motion for Supplemental Notice requesting that the Court direct Stifel to clarify its communications related to this lawsuit and the conditions attached to Stifel's purported plan to repurchase ARS. Stifel responded on March 2, 2009, and again on March 6, 2009. In its March 2nd opposition, Stifel argued

that Plaintiff's Motion for Supplemental Notice was premature because the press release "was simply a statement to the press announcing a Voluntary Partial Repurchase Plan and was not issued directly to any potential class members." In its supplemental opposition filed on March 6, 2009, Stifel reiterated that the plan to repurchase ARS was voluntary, and, in addressing one of Lead Plaintiff's central concerns, emphasized that the proposed offer was to be made "without any associated request for a release."

On March 9, 2009, Stifel issued a second press release related to its proposed plan to buy back additional ARS. Stifel's offer was changed from the February 11, 2009, press release to now include a proposed repurchase -- over a period of approximately 3½ years -- of all ARS sold by Stifel. Under this plan, a Stifel ARS holder with $500,000 in frozen ARS would be paid $50,000 in year one; $45,000 in year two, $40,500 in year three, and the balance, or $364,500 in year four. Unlike the February press release, the March press release added language indicating that Stifel's plan is "subject to . . . events affecting Stifel's financial condition." There was still no mention of a release, and the statement regarding the proposed "assignment" was carried over from the earlier press release.

On March 20, 2009, Stifel filed a sur-reply related to Plaintiffs' Motion for Supplementary Notice. Stifel again argued that Plaintiffs' motion was premature in

that Stifel's communications had been limited to press releases and that "Defendants have *still* never issued a settlement offer or notice to potential class members." (emphasis in original).

On April 9, 2009, Stifel began mailing settlement offers directly to approximately 1,150 ARS holders, the putative members of the proposed class. The parties agree that the original mailing contained (1) a cover letter from Stifel; (2) an "Offer to Repurchase Eligible Auction Rate Securities at Par and Other Information Relating to Auction Rate Securities" (the "Offer") and (3) an Agreement that was to be signed and returned. Stifel intended to include a copy of the First Amended Complaint (referenced as an attachment to the Offer), as well as a State of Missouri Petition which alleges that, similar to Lead Plaintiff's allegations, Stifel made untrue statements regarding auction rate securities' safety and liquidity. These documents were apparently inadvertently omitted from Stifel's original mailing. On April 15, 2009, Stifel subsequently mailed these documents to members of the putative class under a separate cover letter.

Following the mailing of the Offer documents, Lead Plaintiff filed his Motion for Temporary Restraining Order and Preliminary Injunction, arguing that Stifel's April 9, 2009 Offer was confusing, incomplete and misleading in several material

respects.[1]

**Discussion**

Under *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981), the Eighth Circuit Court of Appeals set out the factors for determining if a temporary restraining order or preliminary injunction should be issued. *Id*. at 113. These factors are "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id*. The burden of proving that the relief should be awarded rests entirely on the movant. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003), citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

The irreparable harm factor focuses on the harm or potential harm to the plaintiff of defendant's conduct or threatened conduct. *Dataphase*, 640 F.2d at 114. A plaintiff seeking preliminary injunction must establish that it "is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Natural Res. Def. Council, Inc.*, --- U.S. ----, 129 S.Ct. 365, 374 (2008). Significantly, the Eighth Circuit has consistently held that irreparable harm occurs when a party has no

---

[1] Lead Plaintiff acknowledged at oral argument that the instant Motion effectively supersedes Lead Plaintiff's earlier Motion for Supplemental Notice.

adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. *General Motors Corp v. Harry Brown's, LLC,* 2009 WL 1011504, *5 (8th Cir. April 16, 2009). An irreparable injury is an injury "of such a nature that money damages alone do not provide adequate relief." *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 986 (8th Cir. 2008). If damages will adequately compensate plaintiffs for their injury, injunctive relief is not appropriate. See *Kelly v. Golden*, 352 F.3d 344, 353 (8th Cir.2003).

Moreover, it is also well established that the absence of a finding of irreparable injury is alone sufficient ground for denying a preliminary injunction. "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins*, 346 F.3d at 844; see also *General Motors Corp.*, 2009 WL 1011504, *7; *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506- 07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."); *Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir.1996); "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.,* 190 F.3d 924, 926 (8th Cir.1999) (quoting *Beacon Theatres,* 359 U.S. 500, 506-07). When there is an adequate remedy at law, a preliminary injunction is not appropriate.

*Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734, 738 (8th Cir.1989).

Lead Plaintiff asserts that the threat of irreparable harm lies in the first instance with the May 15, 2009, deadline for the pending offer. In Lead Plaintiff's view, putative class members, who have held illiquid ARS assets for well over a year, are now in a position of having to make a critical decision about whether to accept partial liquidity now with the promise of future payments later, under unreasonable time constraints and with incomplete and confusing information regarding the deal terms. According to Lead Plaintiff, in other words, if the Motion is not granted, putative class members are faced with a choice of participating in Stifel's Offer without the benefit of further explanation of what the terms actually mean. Lead Plaintiff argues that the importance of this decision is clear: the settlement includes a release, an assignment of certain claims, and an agreement not to participate in this case even though Stifel's repurchase promise is set out over several years for most ARS holders. Lead Plaintiff urges that, simply put, any absent class member is free to release Stifel from the conduct alleged in this lawsuit; however, full and complete information regarding the consideration for the release is not presented and therefore, irreparable harm will result.

Glaringly absent from Lead Plaintiff's argument, however, is any explanation whatsoever regarding what constitutes the ARS holders' irreparable harm. Merely

stating the proper terminology does not give rise to establishing the element. Although this Court questioned counsel[2] various times regarding what the actual *irreparable* harm will be absent injunctive relief, a clear explanation was never articulated. Plaintiff's argument completely ignores the fact that money damages provide a complete and adequate remedy. While Lead Plaintiff may believe the alleged harm is significant, unfair, and possibly even underhanded as to the ARS holders, the facts clearly establish that any harm that can be proven by the ARS holders with respect to the exercise or non-exercise of Defendant's offer, is harm that is purely monetary and can be remedied through monetary damages. There is simply no basis upon which to invoke this Court's equitable powers in light of this determinative fact.

Plaintiffs seek an indefinite suspension of the May 15, 2009 acceptance deadline. If subsequently the putative class establishes some entitlement to any remedy relating to this May 15 acceptance deadline, money damages could be easily determined based on the terms of the Offer Documents and would fully restore the ARS holders.

Moreover, if an ARS holder does not accept Defendant's Stifel's repurchase

---

[2] The Court again reiterates that counsel was extremely well prepared for the hearing. Counsel is an impressive orator and an enthusiastic advocate. The findings herein in no way negatively reflect on counsel's representation of Lead Plaintiff.

offer, he or she suffers no conceivable damages.  An ARS holder who declines the Offer and Agreement retains all rights under this lawsuit and otherwise.

That having been said, with respect to the impending deadline of the offer, this Court finds that Defendant should extend the May 15, 2009, deadline. The Offer itself contemplates that Defendant could extend the deadline.  Although there is a possibility that dissemination of an additional time frame could modestly delay initial payments to those who accept the Offer, the Court is equally convinced that the ARS holders should be allowed more time to contemplate the offer, particularly in light of the fact that Defendant inadvertently neglected to originally send significant pleadings which may impact their decisions.  The Court is confident that an extension will still allow Defendant to maintain the June 30, 2009, initial payment date.

## **Conclusion**

The record establishes that any alleged damage incurred by the ARS holders through Defendant's Offer to Repurchase is compensable through monetary damages.  As such, there is no *irreparable* damage requiring an exercise of the Court's equitable powers to issue injunctive relief.  The Court, however, agrees with Lead Plaintiff that in light of the events which have transpired leading up to the distribution of the complete offer, Defendant should extend the May 15, 2009

deadline for acceptance of its offer.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Temporary Restraining Order and Preliminary Injunction, [Doc. 43], is **DENIED.**

**IT IS FURTHER ORDERED** that Lead Plaintiff's Motion for Supplemental Notice, [Doc. No. 24], is denied as moot.

Dated this 29th day of April, 2009.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE